UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE PARKER,

          Plaintiff,

v.

B. TENHOV, D. MOORE,
and UNKNOWN KLINGEL,

          Defendants.
_____/

Case No. 1:22-cv-811

Hon. ROBERT J. JONKER

## REPORT AND RECOMMENDATION

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by *pro se* plaintiff Bruce Parker ("Parker") against Corrections Officer (CO) Brian Tenhove (named as "B. Tenhov"), CO Dallas Moore (named as "D. Moore"), and Lt. Mark Klingel (named as "Unknown Klingel"). Parker is a prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on Parker's motion for summary judgment (ECF No. 22) and defendants' motion for summary judgment (ECF No. 26).

### I.     Parker's allegations

On April 19, 2022, Parker and prisoner Carson were leaving food service. CO Tenhove and CO Moore stopped prisoner Carson and asked for a patdown. Compl. (ECF No. 1, PageID.3). CO Moore grabbed Carson's private area. Carson asked Moore "what was he doing?" *Id*. CO Tenhove told Carson "He's not going to do to you like the guy in Grand Rapids (Patrick Lyoya)." *Id*. at PageID.3-4. Parker asked Tenhove "please do not make racist

1

comments like that especially considering the racial tensions that are currently present in this country surrounding race." *Id*. at PageID.4. Tenhove responded, "Moore we can fuck over the prisoners and not get fired. I've been layed [sic] off and suspended and fired and MDOC will just hire you back." *Id*. Parker alleged that he filed a grievance over the incident LRF-22-04-0651-26B ("651"). *Id*.

Parker's grievance stated in as follows:

> This grievance is being filed against c/o Tenhov and C/o/OJT Moore based on racial discrimination and creating a hostile and dangerous environment [sic] in violation of P.D.03.03.130(L). On the above violation date between 12:45 pm and 1:15 pm I as well as prisoner Carson was leaving food service. While leaving prisoner Carson was stopped by C// Tenhov and OJT Moore and asked for a pat down. During the pat down search OJT Moore grabbed Carson's private area which caused him to jump, and ask what he was doing? C/o Tenhov interjected and statated [sic] "that OJT Moore wasn't going to do him Carson like the police did Patrick Lyoye in Grand Rapids, Michigan. I interjected because I was standing their [sic] and asked c/o Tenhov to not say racist comments like that especially considering the racial tensions that are currently present in this country surrounding race. C/o Tenhov responded "Moore we can fuck over the prisoners and not get fired. I've been layed [sic] off and supposedly fired and MDOC will just hire you back." This is unacceptable behavior especially considering how Parick Loyole [sic] was executed by police and put down like a rapid [sic] dog. I'm scarred [sic] and experiencing anxiety attacks.

Grievance 651 (ECF No. 27-5, PageID.130).

Parker infers that CO Tenhove and CO Moore wrote him a false and retaliatory misconduct in retaliation for Grievance 651. Compl. at PageID.4, 6. In this misconduct, CO Moore charged Parker with insolence and disobeying a direct order in front of the chow hall on April 19, 2022. *See* Class II Misconduct Report (April 19, 2022) (ECF No. 1-1, PageID.10). CO Moore described the violation as follows:

> At 12:04 hours I C.O. Moore began shaking down inmate Parker #593090, while shaking Parker down he said, "You're racist, you only shaking down Black people." Upon completing the shakedown inmate Parker called me a "white boy"[.] Parker

2

> then called me a "bitch".   I feel these comments were meant to harass and degrade me.   Upon returning to the unit I told Parker to provide me his I.D. several times.   Parker refused to provide me a [sic] I.D.

Misconduct Report (April 19, 2022).

In a later affidavit, CO Moore explained that he was a "red-tag," that he "had only been recently hired by the MDOC," and that he was still being trained on the job and had to be supervised for most activities."   Moore Aff. (ECF No. 27-4, PageID.127). Moore also stated that he mistakenly listed Parker as the inmate being shaken down:

> While patting down an inmate, Parker called me a "racist," "white boy," and a "bitch."   I perceived these statements to have been made to degrade me.   After I was done with pat downs, I went back into the housing unit to request Parker's identification but Parker refused to provide it.   I issued a misconduct report to Parker based on his statements and failure to produce identification when requested.   I put in the misconduct that I performed a shake down of Parker at the time but this was an error.   I had performed many shake downs that day and it was an oversight as I was being trained on the job.

*Id*.

At the misconduct hearing on April 23, 2022, Parker stated that CO Moore did not shake him down.  A review of the facility video indicated that Moore performed a number of shake downs of prisoners exiting the chow hall on April 19, 2022, and it appeared that Moore performed a shake down on the prisoner in front of Parker.  Misconduct Hearing Report (ECF No. 1-1, PageID.11).   The hearing officer, Lt. Klingel, found no evidence to support the insolence charge against Parker related to the shakedown.   However, Parker later failed to produce his ID card when asked by CO Moore and Lt. Klingel found Parker guilty on one count. *Id*.   In his complaint, Parker alleged that Lt. Klingel "did unjustly find plaintiff guilty of the disobeying a direct order." Compl. at PageID.5.

3

Two days later, on April 25, 2022, Parker alleged that CO Tenhove, Lt. Klingel, and non-party CO Strickler stopped Parker in the doorway of food service and called him a "piece of shit." *Id.* at PageID.4. Parker filed a grievance about the incident identified as Grievance LRF-22-04-0682-17B ("682"). *Id.*

The record reflects that on April 26, 2022, Parker filed Grievance 682 alleging that on the previous day, "C/O Strickler called me a 'piece of shit' which was echoed by C/O Tenhov and Lt. Klingel." Grievance 682 (ECF No. 27-6, PageID.132).[1]

On the day that Parker filed Grievance 682, he alleged that CO Tenhove made statements to him and then wrote him a "false and retaliatory misconduct":

> 14. On April 26, 2022, plaintiff while at the officers [sic] desk was called a habitual liar by defendant Tenhov because of plaintiff's complaints detailing his unruly and unethical and sexual misconduct. Defendant Tenhov then called plaintiff a dumb bitch and threatened to frame plaintiff with false misconducts because in his words "plaintiff couldn't let bygons [sic] be bygons [sic] and drop my grievances" [sic].
>
> 15. On this same day in question April 26, 2022, as promised defendant Tenhov framed plaintiff with a false and retaliatory misconduct alleging "he asked plaintiff to hand him my pass as I was allegedly attempting to exit Baldwin unit." See Connected (Disobeying a Direct Order Class II. Misconduct dated: 4/26/2022).

Compl. at PageID.4-5.

The record reflects that CO Tenhove issued Parker a misconduct on April 26, 2022, charging Parker with disobeying a direct order at 11:17 a.m. at the Baldwin Base:

> At the above time- Place I asked inmate Parker #593090 to hand me his pass as he was attempting to exit baldwin unit. This order was given from 2 ft away w/direct eye contact. Inmate Parker then handed his pass to c/o Banks. At no time did inmate Parker comply w/this resonable [sic] order. ADW Wingert was present for this order.

---

[1] While CO Strickler allegedly made other statements to Parker, Strickler is not a party to this lawsuit.

4

Misconduct (April 26, 2022) (ECF No. 27-2, PageID.114).

Parker alleged that Lt. Klingel retaliated against him by finding him guilty of the misconduct,

> On May 4, 2022, Plaintiff was heard on the false Class II Disobeying a Direct Order Misconduct written on 4/26/22 by defendant Tenhov [sic] by defendant Klingel. Defendant Klingel in retaliation of plaintiff [sic] complaints against him disregarded evidence and video evidence and lied and stated "after review of video prisoner Parker comes rom the B wing and never speaks to officer Banks." Plaintiff swears under perjury that he was never on B-wing as alleged. Plaintiff locked on C-Wing in cell 62-Bottom as verified on the misconduct. Plaintiff again reiterated that the misconduct was in retaliation of plaintiffs [sic] complaints at which point defendant Klingel said "stop filing grievances and then found plaintiff guilty of disobeying a direct order.[]

Compl. at PageID.5-6.

Parker contends that,

> By virtue of the foregoing, defendants Tenhov[sic], Moore and Klingel did individually and collectively retaliate against plaintiff motivated by plaintiff's complaints both written and verbal and did indeed issue false misconducts and provide false statements in support of those false misconducts and finally, issued retaliatory and improper guilty findings as a means to deter and chill plaintiffs [sic] protected conduct in violation of the Free Speech and Petitioning Clause of the First Amendment of the United States Constitution.

*Id.* at PageID.6.  Parker seeks compensatory and punitive damages.  *Id.*

The Court construes Parker's complaint as alleging three incidents of retaliation. First, CO Tenhove and CO Moore issued Parker a "false misconduct" on April 19, 2020 in retaliation for Parker's complaints set out Grievance 651. Second, CO Tenhove and CO Moore issued Parker another "false misconduct" in retaliation for Parker previously filing Grievance 682. Third, Lt. Klingel found Parker guilty of two misconduct reports in retaliation for Parker filing Grievances 651 and 682.

5

## II.   Motion for summary judgment

### A.   Legal standard for summary judgment

The parties have filed cross-motions for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).

"In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly

adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Finally, Parker has filed a "verified" complaint which has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

### B. Discussion

Parker seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

To prove a First Amendment retaliation claim, a plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

A prisoner must be able to prove that the exercise of the protected right was the substantial and motivating factor in the defendant's alleged retaliatory conduct.

7

> As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech. If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim.

*Nieves v. Bartlett*, -- U.S. --, 139 S. Ct. 1715, 1722 (2019) (internal quotation marks and brackets omitted).

The Court concludes that defendants prevail on the cross-motions. The incidents set forth in both Grievance 651 and Grievance 682 involved alleged verbal harassment. Grievance 651 complained about statements directed at another prisoner (Carson) in an incident involving CO Tenhove and CO Moore. Grievance 682 complained that non-party CO Strickler called Parker a "piece of shit" which defendants CO Tenhove and Lt. Klingel "echoed." As this Court explained in *Henderson v. Olsen*, No. 2:20-cv-00252, 2023 WL 2938479 at *3 (March 15, 2023), *R&R adopted*, 2023 WL 2933015 (W.D. Mich. April 13, 2023), a grievance or threat of a grievance based on verbal harassment is not protected conduct for purposes of establishing First Amendment retaliation:

> The Sixth Circuit has explained that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.' " *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). "If the grievances are frivolous, however, this right is not protected." *Id*.
>
> As acknowledged by the Sixth Circuit in *Maben v. Thelen*, "cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*." 887 F.3d 252, 264-65 (6th Cir. 2018) (collecting cases). One circumstance in which courts have found grievances to be *de minimis* and therefore frivolous is when the grievance complains of verbal abuse or harassment. *Sampson v. Davis*, No. 2:19-CV-176, 2022 WL 2760061, at *3 (W.D. Mich. May 12, 2022) (finding that a prisoner's threat to file a grievance on a CO for verbal harassment was *de minimis* and therefore frivolous), *R&R adopted*, No. 2:19-CV-176, 2022 WL 2753565 (W.D. Mich. July 14, 2022); *Maben*, 887

> F.3d at 264 (citing *Scott v. Kilchermann*, No. 99-1711, 2000 WL 1434456, at *2 (6th Cir. Sept. 18, 2000)).
>
> In his verified complaint, Henderson alleges that CO Olsen made "unnecessary," "degrading," "unprofessional," and "inappropriate" remarks, prompting Henderson to request a grievance form and tell CO Olsen that he would be filing a grievance against Olsen for "demeaning comments and behavior." (ECF No. 1, PageID.5-6.)  In the opinion of the undersigned, Henderson's allegations are insufficient to rise above the level of verbal harassment. And as grievances alleging verbal harassment are *de minimis*, Henderson's threat to file a grievance against CO Olsen was frivolous. Because this is Henderson's only purported protected conduct, the undersigned recommends that the Court find that Defendants are entitled to summary judgment.

*Henderson*, 2023 WL 2938479 at *3, *R&R adopted*, 2023 WL 2933015 (footnotes omitted).

For the reasons stated in *Henderson*, Parker's grievances were *de minimis*, frivolous filings which did not rise to the level of protected conduct under the First Amendment.  Parker has failed to establish a retaliation claim against defendants.  Accordingly, defendants' motion for summary judgment should be granted and Parker's motion for summary judgment should be denied.

### III.  Qualified immunity

While defendants contend that they are entitled to qualified immunity, their claim consists of a recitation of the legal standard for qualified immunity followed by the conclusory statement that, "For the reasons stated in the arguments set forth above, Defendants are entitled to qualified immunity because Parker has not demonstrated that any clearly established constitutional right has been violated."  Defendants' Brief (ECF No. 27, PageID.110).  Defendants' cursory argument does not develop a qualified immunity defense for their actions taken against Parker; it simply repeats defendants' claim that they did not violate Parker's constitutional rights. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation,

are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, defendants' claim of qualified immunity should be denied.

### IV. Recommendation

Accordingly, I respectfully recommend that plaintiff's motion for summary judgment (ECF No. 22) be **DENIED**, that defendants' motion for summary judgment (ECF No. 26) be **GRANTED**, and that this case be **TERMINATED**.

Dated:  January 31, 2024                             /s/ Ray Kent
                                                     RAY KENT
                                                     United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).